MASON B. DeWITT, GUARDIAN OF JOHN S. BEARD-
SHEAR, PLAINTIFF AND APPELLANT, V. GEORGE
MATTISON, DEFENDANT AND APPELLEE.

[FILED JUNE 13, 1889.]

**Guardian and Ward.** In an action by the guardian of a person
alleged to be insane, to cancel a deed of conveyance of real es-
tate, the court below found that there was a failure to prove in-
sanity, and that the conveyance was valid. *Held,* That the
finding and judgment were sustained by the proof.

APPEAL from the district court of Dixon county.
Heard below before POWERS, J.

*W. E. Gantt,* for appellant, cited: *Mathiessen v. Mc-
Mahon's Adm'r,* 38 N. J. Law, 536; *Jackson v. King,* 4
Cowen, 207; *Anglo-Californian Bank v. Ames,* 27 Fed.
Rep. 727.

*Barnes Brothers,* for appellee, cited: *Corbit v. Smith,* 7
Ia. 60; Field's Lawyers' Briefs, vol. 6, p. 343, sec. 437;
*Behrens v. McKenzie,* 23 Ia. 333; *Franklin v. Kelley,* 2
Neb. 117; *Mulloy v. Ingalls,* 4 Id. 117.

MAXWELL, J.

The plaintiff brought an action against the defendant to
set aside a certain deed of conveyance of real estate made
by one John S. Beardshear to the defendant.   On the trial
of the cause the court found the issues in favor of the de-
fendant and dismissed the action.   The plaintiff appeals.
He alleges in his petition, "That on the 24th day of July,
1886, and long previous to said date, John S. Beardshear
was the legal owner and in possession of the following de-
scribed premises, to wit: northeast quarter of northwest
quarter of section twenty; east half of southwest quarter,

and northwest quarter of southwest quarter of section seventeen, except three acres off south side of northwest of southwest quarter of section seventeen, all of said land being located in township thirty-one, of range six east, in Dixon county, Nebraska; that on the said 24th day of July, 1886, and long previous thereto, the said John S. Beardshear was a person of unsound mind, and wholly incompetent to transact business, and that said insanity and incompetency to transact business as aforesaid still exists at this time; that on the 24th day of July, 1886, the said defendant, George Mattison, well knowing the condition of said John S. Beardshear, and while the said John S. Beardshear was not conscious of what he was doing, and was wholly incapable of transacting any business by reason of his mental condition, all of which was well known to said defendant, he, the said defendant, induced the said John S. Beardshear to execute to the said defendant, a deed of the said real estate hereinbefore set out and described; that said conveyance so executed was for a grossly inadequate consideration, the said defendant paying for said real estate, and for the crops at said date growing and being thereon, the sum of $770, and assuming the payment of a certain mortgage for $300 against said land, which mortgage is still unpaid and remains a lien upon said real estate; that said crops were of a value at least $300, and the said defendant has converted the same to his own use and realized therefrom said sum of $300; that said defendant has since the execution of said deed as aforesaid, removed from said real estate certain buildings and other property of the value of $500, and converted the same to his own use; that the use of said real estate and the property so converted by the defendant to his own use amounts to a much greater sum than that paid by the said defendant as a consideration for said real estate; that the said real estate at the time of defendant's procuring said conveyance as aforesaid, and ever since, and now is, of a value of more than $2,000, and that said

conveyance was procured to be made and said property converted by said defendant for the purpose of defrauding the said John S. Beardshear out of the same; and demand was duly made for the reconveyance of said premises to said Beardshear; that on the 6th day of January, 1887, upon proceedings duly instituted in the county court of Dixon county, Nebraska, the said John S. Beardshear was adjudged to be a person of unsound mind, and thereupon, by an order of said court duly made on the 6th day of January, 1887, at Ponca, Neb., this plaintiff was appointed the guardian of the person and estate of the said John S. Beardshear, and duly qualified as such guardian."

The answer consists of a number of specific denials, and particularly denies that Beardshear was insane when he executed the deed in question.   The testimony shows that Beardshear has resided in Dixon county for many years, and has a number of relatives in that county; that he was a capable mechanic, and for many years prior to the autumn of 1885, had followed the business of a carpenter and mill-wright during the summer seasons, and carried on a blacksmith shop on his farm during each winter.   So far as we can judge by the testimony, he seemed to give general satisfaction to his employers in any business he engaged in. He was married many years ago, (the exact date does not appear,) and had a number of children, but the number and respective ages are not stated.   There is some testimony tending to show that his married life was not entirely harmonious, and that some three years ago he with a brother-in-law had consulted an attorney in regard to a divorce.   The cause of disagreement, however, could not have been very serious, if, indeed, it was more than the meddling of busybodies, as no action for divorce was instituted.   Some of his relatives who testify in the case cast reflections upon the conduct of the wife, who is now dead, that seem to be uncalled for, and should have been omitted. If their own theory of the case is true, it is probable that

42

the wife had some difficulties to contend with, and perhaps overcome, as well as the husband; and imputations upon her conduct now that she cannot be heard, seem out of place; the only controversy being the mental condition of Beardshear at the time he executed the conveyance sought to be set aside.

In the autumn of 1885, Beardshear and a brother named George, went to the Black Hills. The former returned home in January or February, 1886, and went on to Ohio to purchase the necessary machinery for a saw mill which they were about to erect in the Black Hills. At that time both he and his wife conversed freely about selling the farm and removing to the neighborhood of the mill. The desire seems to have been to sell for cash and not on credit or for notes or other obligations. Beardshear spoke to the defendant about purchasing the farm, and he seems to have offered $1,100 for it. Nothing was done, however, in relation to the sale, and Beardshear, after obtaining the machinery for the mill, returned to the Black Hills, and, with the other persons interested therein, erected the mill spoken of. A quantity of lumber seems to have been sawed there, but the sale of lumber was slow, and some time early in June, 1886, Beardshear sold out his interest in the mill to his partners and returned home. A few days before his return, his wife died and was buried.

There is some testimony also tending to show that a daughter had married a man who, it was claimed, was somewhat addicted to the use of intoxicating liquors, and that on that account Beardshear was opposed to the marriage. It also appears that there was a mortgage on his farm for $300; that his wife had borrowed $50 from the defendant, and had contracted a small debt at one of the stores, and that there was a doctor's bill of more than $20. These troubles seem to have preyed upon Beardshear's mind and made him anxious to sell the farm and pay his debts. He evidently was in a condition of mind to make a foolish

bargain; but the proof clearly shows that he was not insane, but capable of making a contract. This fact is clearly shown by the clear weight of testimony of the witnesses for the plaintiff, and it seems that it was scarcely necessary to have called witnesses for the defendant. This was done no doubt as a precaution, and to show that the sale in all respects was conducted fairly and without resort to underhand means. During the winter of 1885 and 1886, Beardshear had tried to sell the land in question for $1,500. A number of persons seem to have been willing to pay that sum for it, but not in money. There was a life lease on a small part of the land in favor of Beardshear's mother-in-law, which seems to have been valued at $200, and which the defendants purchased subject to; but whether this was considered in connection with the other proposals does not appear. It evidently was well known to some of the relatives of Beardshear, before he made the sale, that he was anxious to sell the farm, and the proposals which had been made for the purchase of the same, as well as the price that he was asking for it, were also evidently known. The crops during that year are shown to have been light and of but little value. Taking the entire testimony as to the value of the land, while the price paid was low, it was not so disproportionate to the true value as to invoke the aid of a court of equity for relief. It will be observed that there is no charge in the petition that the defendant resorted to deception or other improper means to obtain the land; the right to relief being based solely on the inability of Beardshear to make the conveyance. There is no offer to return the consideration paid or any part thereof.

If, therefore, the proof fails to establish such incapacity, then the plaintiff must fail in the action. The proceedings in the county court appointing a guardian, cannot be considered in the case, as they took place long subsequent to the execution of the deed in question. Beardshear seems to be a man easily influenced by stronger minds, and may,

from lack of motive, from lack of employment, or other cause, have become incapable of transacting business; but that question is not before the court. The costs in the case are taxed at $241.83. The record contains but 232 pages of testimony, and less than 300 pages in all, and it is difficult to perceive in what legitimate manner such a bill of costs could have been incurred. The remedy, however, is by a motion to retax. It is probable, too, that the ends of justice would be subserved by requiring each party to pay his own costs, and it is so ordered.

In other respects the judgment of the court below is right and is affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.